**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JEFFREY S. BUSKE, ) | CASE NO:   5:08-cv-00186 |
| ) | |
| Petitioner, ) | JUDGE NUGENT |
| ) | |
| v. ) | MAGISTRATE JUDGE |
| ) | VECCHIARELLI |
| MICHELLE EBERLIN, Warden, ) | |
| ) | **REPORT & RECOMMENDATION** |
| Respondent. ) | |

Petitioner Jeffrey Buske ("Petitioner"), challenges the constitutionality of his conviction in *State v. Buske*, Case No. 04-CR-1808 in the Stark County Common Pleas Court.  Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on January 22, 2008, in the United States District Court for the Northern District of Ohio.  (Doc. No. 1.)  Respondent filed a Return of Writ on April 7, 2008  (Doc. No. 9.) and Petitioner filed a Traverse on August 1, 2008 (Doc No. 12).

This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2.  For the reasons set forth below, the Magistrate Judge recommends that Petition be **DENIED**.

**I. Factual Background**

The Fifth Circuit Court of Appeals, Cuyahoga County, Ohio set forth the facts of this case on direct appeal.  The Court affirmed the jury trial conviction, vacated the

sentence in light of the original sentence violating *Blakely v. Washington*, 542 U.S. 296 (2004), and remanded for sentencing only:

> [*P1] On October 29, 2004, the Stark County Grand Jury indicted appellant, Jeffery Buske, on one count of rape in violation of R.C. 2907.02, one count of unlawful sexual conduct with a minor in violation of R.C. 2907.04, one count of sexual imposition in violation of R.C. 2907.06, and two counts of sexual battery in violation of R.C. 2907.03. Said charges arose from incidents involving three preteen/teenage girls, one of which was appellant's natural daughter.
>
> [*P2] A jury trial commenced on August 22, 2005. The jury found appellant guilty as charged. By judgment entry filed August 31, 2005, the trial court sentenced appellant to an aggregate term of eight years in prison. Appellant stipulated to being classified as a sexual predator.
> ***
>
> [*P18] Appellant was convicted of rape in violation of R.C. 2907.02(A)(1)(b), sexual battery in violation of R.C. 2907.03(A)(5), unlawful sexual conduct with a minor in violation of R.C. 2907.04(A) and sexual imposition in violation of R.C. 2907.06(A) which state the following, respectively:
>
>> [*P19] "[R.C. 2907.02(A)(1)(b)] No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
>>
>>> [*P20] "The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
>>
>> [*P21] "[R.C. 2907.03(A)(5)] No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:
>>
>>> [*P22] "The offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis of the other person.
>>
>> [*P23] "[R.C. 2907.04(A)] No person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard.
>>
>> [*P24] "[R.C. 2907.06(A)] No person shall have sexual contact with

another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

> [*P25] "(1) The offender knows that the sexual contact is offensive to the other person, or one of the other persons, or is reckless in that regard.
>
> [*P26] "(2) The offender knows that the other person's, or one of the other person's, ability to appraise the nature of or control the offender's or touching person's conduct is substantially impaired.
>
> [*P27] "(3) The offender knows that the other person, or one of the other persons, submits because of being unaware of the sexual contact.
>
> [*P28] "(4) The other person, or one of the other persons, is thirteen years of age or older but less than sixteen years of age, whether or not the offender knows the age of such person, and the offender is at least eighteen years of age and four or more years older than such other person.***"

[*P29] Appellant argues his convictions were based solely on the testimony of the three victims, L.H., A.H. and K.B., as no physical evidence was presented. Appellant argues their testimony lacked credibility because of the similarity of the testimony of L.H. and K.B., and the failure to report the incidents when there was the opportunity to do so. We disagree with these arguments for the following reasons.

[*P30] Although K.B. as appellant's daughter had some motive to create a story, L.H. and A.H. did not. Each girl described similar behavior by appellant. Appellant approached them when they were sleeping and fondled them and engaged in sexual contact/conduct. T. at 158-160, 163-166, 201-202, 234-236, 241-242, 245-246. K.B. substantiated A.H.'s claims. T. at 244-245. The similarities in their testimony demonstrated appellant's modus operandi. Appellant admitted to finding himself in K.B.'s bed, but explained it away as "sleepwalking." T. at 248, 290-291.

[*P31] Defense counsel cross-examined K.B. on her motives and all three girls on the delay in reporting. T. at 174-176, 179-181, 188-189, 211-212, 217-218, 262-263, 269-272. The jury was given the opportunity to weigh the lack of reporting and the motives proffered against the testimony of the three girls and their description of appellant's behavior along with appellant's admissions.

> [*P32] Upon review, we find sufficient credible evidence to substantiate the jury's verdict, and no manifest miscarriage of justice.

(Respondent's Return of Writ, Exhibit 1, 2006-Ohio-2054 at ¶ 1-2, 18-32).

## II. Procedural History

### A. Post-Sentencing Procedural Posture

On September 23, 2005, Petitioner, through trial counsel (attorney Michael Peterson) and new counsel (attorney Tom Rein), filed a timely direct appeal in the Stark County Court of Appeals from the judgment of conviction in 04-CR-1808. (Respondent's Exhibit 11, Notice of Appeal, COA 05-CA-240; Respondent's Exhibit 12, Docket, COA 05-CA-240).

On December 7, 2005, Petitioner's counsel filed his appellant's brief presenting the following eight assignments of error for review:

> 1. The trial court erred in denying appellant's motion for acquittal as to the charges.
>
> 2. Appellant's convictions are against the manifest weight of the evidence.
>
> 3. The trial court erred by reading back specific testimony of the witnesses to the jury.
>
> 4. The trial court committed plain error in giving a potentially deadlocked jury an instruction that deviated from the instruction approved in *State v. Howard* (1989), 42 Ohio St. 3d 18, 537 N.E.2d 188.
>
> 5. The trial court erred in sentencing appellant to more than the minimum prison sentence the court did not make a finding that he had not previously served a prison term.
>
> 6. The trial court erred by ordering appellant to serve a consecutive sentence without making the appropriate findings required by R.C. 2929.14(e)(4).
>
> 7. The trial court impermissibly punished appellant for asserting his right to a jury trial.

> 8. The trial court erred when it imposed a $20,000 fine on appellant without considering appellant's present and future ability to pay as required by R.C. 2929.19(b)(6).

(Respondent's Exhibit 13, Appellant's Brief, COA 05-CA-240, at pp. 2-3).

On January 13, 2006, the State filed its appellee's brief. (Respondent's Exhibit 14, Appellee's Brief, COA 05-CA-240).

On April 24, 2006, the state appeals court affirmed the judgment of conviction, vacated the sentence, and remanded for re-sentencing only. (Exhibit 1; *also see*, Respondent's Exhibit 15, Opinion, COA 05-CA-240).  Petitioner did not file a timely appeal from that judgment in the Ohio Supreme Court.

### 2. Timely application to reopen direct appeal – Ohio App. R. 26(B).

Three months after the direct appeal decision, on July 24, 2006, Petitioner, through new counsel (attorney David Doughten), filed an application to reopen the direct appeal based upon the ineffective assistance of appeal counsel in failing to present the following proposed assignments of error, or not presenting them as constitutional violations:

> 1) The trial court erred by allowing the State to adduce hearsay evidence through victim K.B. (regarding what victim A.H. had told K.B.) for the jury's consideration, thereby violating the right to confrontation;
>
> 2) The trial court erred by not striking opinion testimony of a State witness (Sgt. Eric Weisburn testified that victim K.B.'s allegation, that she had been sexually abused in Texas by her step-father, was unsubstantiated and determined to have been false) was unfairly prejudicial to Buske;
>
> 3) The trial court erred by reading back specific testimony of the witnesses to the jury, which was presented as a state law violation, is also a violation of the Fifth, Sixth, and Fourteenth Amendments;
>
> 4) The trial court impermissibly punished Buske for asserting his right to a jury

5

trial, which was presented as a state law violation, is also a violation of due process under federal law.

(Respondent's Exhibit 16, Application to Reopen, COA 05-CA-240).

On August 23, 2006, the State filed its opposition to reopening. (Respondent's Exhibit 17, Brief in Opposition to Reopening, COA 05-CA-240).

On September 27, 2006, the state appeals court denied reopening. (Respondent's Exhibit 18, Judgment Entry (denying reopening), COA 05-CA-240).

On October 27, 2006, Petitioner's counsel (attorney Doughten) filed a notice of appeal and jurisdiction memorandum in the Ohio Supreme Court from the denial of reopening. (Respondent's Exhibit 19, Docket, OSC 06-2003; Respondent's Exhibit 20, Notice of Appeal, OSC 06-2003; Respondent's Exhibit 21, Jurisdiction Memorandum, OSC 06-2003). Petitioner's counsel presented the following five propositions of law:

> Proposition of Law No. 1: The failure to raise meritorious issues on direct appeal denies a convicted person the right to effective assistance of appellate counsel.
>
> Proposition of Law No. 2: Allowing a state witness to testify to the jury about an alleged incident the witness learned only through a conversation with a third party is violative of federal due process.
>
> Proposition of Law No. 3: An investigating officer may not testify as to his conclusions as to disputed issues of fact as such testimony invades the province of the jury.
>
> Proposition of Law No. 4: If the court chooses to acquiesce to a jury request for the reading of witness testimony, the entire witness testimony must be read unless otherwise agreed to by the parties.
>
> Proposition of Law No. 5: The trial court impermissibly punished the appellant for asserting his right to a jury trial.

(Exhibit 21 at p. i).

On January 24, 2007, the Ohio Supreme Court dismissed the appeal as not

6

involving any substantial constitutional question. Respondent's Exhibit 22, Entry, OSC 06-2003). Petitioner did not take a further appeal from that judgment. (*See* Exhibit 19).

### 3. Delayed direct appeal denied by Ohio Supreme Court.

On December 29, 2006, Petitioner's counsel (attorney Doughten) filed a notice of appeal and a motion for leave to file delayed appeal pursuant to Ohio App. R. 5(A) in the Ohio Supreme Court from the 2006 re-sentencing judgment of conviction. (Respondent's Exhibit 23, Docket, OSC 06-2398; Respondent's Exhibit 24, Notice of Appeal, OSC 06-2398; Respondent's Exhibit 25, Motion for Leave to File Delayed Appeal, OSC 06-2398).

On February 28, 2007, the Ohio Supreme Court denied the motion for delayed appeal. (Respondent's Exhibit 26, Entry, OSC 06-2398). Petitioner did not take a further appeal from that judgment. (See Exhibit 23).

### B. Federal Habeas Petition

On January 22, 2008, Petitioner's counsel (attorney Doughten) filed the instant petition for writ of habeas corpus presenting the following five grounds for relief:

GROUND FOR RELIEF NO. 1: "IAC appeal."

Supporting Facts: Appellate counsel failed to raise the following issues (A) The Trial Court Erred by Allowing the State to Adduce Hearsay Evidence for the Jury's Consideration; (B) The Trial Court Erred By Not Striking Opinion Testimony of a State's Witness That Was Unfairly Prejudicial to the Appellant; (C) The Trial Court Erred By reading Back Specific Testimony of the Witnesses to the Jury; and (D) The trial Court impermissibly punished the appellant for asserting his right to a jury trial.

GROUND FOR RELIEF NO. 2: "Denial of Right to Confront Declarant."
Supporting Facts: As noted in the First Claim for Relief, the trial court, over objection, allowed the defendant's daughter to testify that a friend had told her that the petitioner had touched her inappropriately."

>GROUND FOR RELIEF NO. 3: "Unfairly prejudicial irrelevant evidence."
>Supporting Facts:  The trial court improperly permitted an investigating officer to testify as to his conclusions as to disputed issues of fact as such testimony invades the province of the jury. *** A few questions later, Sgt. Weisburn informed the jury that the petitioner had learned from his daughter Kalia that she had been sexually assaulted by her stepfather while with him in Texas. The trial court, over objection, allowed the witness to testify that he "was able to determine that that was not a fact." The witness concluded that 'nothing had happened (no previous abuse).' The court thus allowed Sgt. Weisburn to testify that in his opinion, the petitioner was lying about Kalia's allegation of prior sexual abuse. In the alternative, the jury may have adduced that that (sic.) Kalia had been truthful in stating that there had been no prior abuse in her testimony. This would constitute improper vouching."
>
>GROUND FOR RELIEF NO. 4: "Selective Presentation of Testimony Transcript to Jury."
>Supporting Facts:  If the court chooses to acquiesce to a jury request for the reading of witness testimony, the entire witness testimony must be read unless otherwise agreed to by the parties. Reading back only selected portions of the testimony may result in inaccurate emphasis on the selected testimony. The trial court agreed to read back specific portions of witness testimony to the jury in response to a jury request. Defense counsel requested that the entire testimony be read, rather than just a portion of it. The judge proceeded to read only the requested portion. *** The selective reading skewed the jury's assessment of jury credibility. ***."
>
>GROUND FOR RELIEF NO. 5: "Punishment for Exercising Trial Right."
>Supporting Facts: The trial court improperly sentenced the petitioner to a greater sentence than would have been the sentence because he tried his case instead of pleading guilty. The violation is a violation of federal law. The trial court at sentencing commented that, 'one of the guidelines that I use in these types of cases and in any type of case is whether the Defendant decides to enter a plea to the charge or charges….' The court commented that he did not mean that a defendant should be punished for going to trial, but then indicated that he would have more consideration for a defendant who wants to 'face the music.' ***here, the trial court was not unequivocal in stating that the defendant was not punished for going to trial.

(Doc. 1, Petition, ¶ 12(A)-(E), at the attached memorandum and stated paragraph

numbers therein).

In the Return of Writ, the Respondent argues that Grounds Two, Three, Four,

8

and Five are procedurally defaulted. In the Traverse, Petitioner concedes that these Grounds are procedurally defaulted. (Doc. 12.) In addition, Petitioner concedes that Respondent's legal arguments are correct with regard to Ground One, Sub-claims One and Four. Therefore, the Magistrate Judge will review only Ground One, Sub-claims Two and Three.

## III. Review on the Merits

### A. Standard of Review

This case is governed by provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996), because Gaines filed his habeas petition after the effective date of AEDPA. *See Lindh v. Murphy,* 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law can be determined only by examining the holdings of United States Supreme Court, as opposed to dicta. *See Williams v. Taylor,* 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett,* 404 F.3d 1006, 1010 (6th Cir. 2005). Nevertheless, an explicit statement by the Supreme Court is not required; rather, "the

9

legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010, *quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002). As the plain language of the statute indicates, the inquiry is limited to decisions by the Supreme Court. *Williams*, 529 U.S. at 412.

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413.

A state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* An incorrect state court decision may not be unreasonable under this standard. *Id.* at 410-11. For this reason, a federal habeas court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, No. 03-2113, 2006 WL 68438, at *4 (6th Cir. Jan.10, 2006), *citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir.1998) ("[AEDPA] tells federal courts: Hands off, unless the judgment in place is based on an error grave enough to be called unreasonable.")).

The "unreasonable" requirement is a high bar. *Ruimveld*, 404 F.3d at 1010.

### B. Ineffective Assistance of Appellate Counsel

Petitioner argues that appellate counsel was ineffective for two reasons: (1) counsel failed to raise as an alleged error that the trial court did not strike testimony of a sheriff deputy (Sub-claim Two) and (2) counsel failed to raise as an alleged error that the trial court read specific testimony of the witnesses to the jury (Sub-claim Three).

A criminal defendant is entitled to effective assistance of counsel on appeal, as well as at trial. *Evitts v. Lucey*, 469 U.S. 387 (1985). While appellate counsel need not advance every argument urged by the appellant, failure to raise an issue may amount to ineffective assistance counsel. *McFarland v. Yukins*, 356 F.3d 688 (6th Cir. 2004), citing *Joshua v. Dewitt*, 341 F.3d 430, 441 (6th Cir. 2003).

"In order to succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show errors so serious that counsel was scarcely functioning as counsel at all and that those errors undermine the reliability of the defendant's convictions." *McMeans v. Brigano*, 228 F.3d 674, 682 (6th Cir. 2000). If there is reasonable probability that raising an issue on appeal would have changed the result of the appeal, counsel's failure to do so amounts to ineffective assistance. *McFarland*, 356 F.3d at 699. "Counsel's performance is strongly presumed to be effective." *Id.*, quoting *Scott v. Mitchell*, 209 F.3d 854, 880 (6th Cir. 2000).

#### 1. Failing to Raise the Issue of Trial Court Error Regarding the Testimony of a Sheriff's Deputy (Sub-claim Two)

Petitioner asserts that appellate counsel should have argued that the trial court erred with regard to testimony of Sgt. Eric Weisburn, of the Stark County Sheriff's

Department. Specifically, Petitioner claims his appellate counsel should have challenged the admission of the Sergeant's testimony (1) about an alleged domestic violence incident in the Petitioner's home and (2) that vouched for/bolstered the testimony of the victim, K.B.

The extent of the legal argument set forth by Petitioner, who is represented by counsel in the instant action, regarding the testimony about the alleged domestic violence incident is:

> The judge allowed a sheriff deputy to testify about alleged domestic violence in the home on a prior occasion. There was no conviction. Buske was not charged with this offense. The unfair prejudice deprived Buske of a fair trial.
>
> * * * *
>
> Sgt. Eric Wesiburn, of the Stark County Sheriff's Department, testified in court that:
>
> Q.   Do you ask him about any other violence in his home?
>
> A.   Yes.
>
> Q.   Okay.
>
> A.   There was a domestic violence incident that was based - -
>
> The defense objected to this line of question and the characterization that the incident was domestic violence. The judge did not rule on the motion. The prosecutor re-phrased the question, asking if a physical confrontation had occurred between the petitioner and his wife.

Petitioner cites no legal authority for the assertion that he was unfairly prejudiced by the admission of this testimony. On this basis alone, this Court finds it difficult to conclude that reasonable probably exists that raising the issue on appeal would have changed the result on appeal.

But, assuming *arguendo* that the issue had been properly argued in this Court,

12

the Court does not conclude that the admission of this evidence was improper or resulted in unfair prejudice to the Petitioner.

The State questioned Sgt. Weisburn regarding an incident between Petitioner and his daughter, K.B., one of the victims. Sgt. Weisburn explained that Petitioner admitted to throwing K.B. on the floor and having his hand around her throat or upper chest. The State further questioned Sgt. Weisburn about violence in the home:

Q. Do you ask [Petitioner] about any other violence in his home?

A. Yes.

Q. Did he have any incidence to share with you?

A. Yes, there was an incident between him and his wife, Michelle.

Q. Okay.

A. There was a domestic violence incident that was based –

MR. PETERSON: Objection, Your Honor.

THE COURT: Why don't you all come around for just a minute.

(A conference was had at the bench outside the hearing of the jury.)

(A conference was had off the record at this point in the proceedings.)

(End of conference at bench.)

BY MS. WATSON:

A. Sergeant, did Mr. Buske indicate to you that there had been a physical confrontation between he and his wife?

THE COURT: It is yes or no answer.

A. Answer it?

THE COURT: Yes, yes or no.

13

A. Yes.

(Tr. at 294-95.)

The confrontation between Petitioner and his wife was not used to show that Petitioner acted in conformity with a violent character. Rather, as Respondent argues, the general line of questioning introduced the explanations that Petitioner gave to the police for K.B.'s allegations of abuse. Moreover, when the prosecutor questioned Sgt. Weisburn about "domestic violence," the defense objected and the prosecutor rephrased the question. Finally, the remark was isolated and unlikely to unfairly prejudice Petitioner, particularly in light of the other evidence in the case. Therefore, had appellate counsel raised the issue on appeal, it is improbable that the result of the appeal would have been altered. Thus, appellate counsel was not ineffective in failing to raise this issue.

Petitioner asserts also that appellate counsel was ineffective for failing to argue that Sgt. Weisburn's vouched for or bolstered the testimony of K.B. - specifically, the Sergeant's testimony that he "was able to determine that [Petitioner's statement to him that K.B. had been sexually abused by her stepfather] was not a fact." Sgt. Weisburn concluded that "nothing had happened." Petitioner asserts that this testimony amounts to improper vouching or bolstering.

Vouching may constitute prosecutorial misconduct. In reviewing a claim of prosecutorial misconduct, a court examines whether the challenged conduct was improper. *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006). If the conduct is determined to be improper, the court must determine whether the conduct was so flagrant so as to deprive the defendant of a fundamentally fair trial. *Id.* To determine

14

whether the defendant was deprived of a fair trial, the court shall consider (1) the likelihood that the challenged conduct mislead the jury or prejudiced the defendant; (2) whether the challenged conduct was isolated or extensive; (3) whether the challenged conduct was deliberate; and (4) the total strength of the evidence against the defendant.  *Bates v. Bell*, 402 F.3d 630, 641 (6th Circ. 2005).

Petitoner alleges the prosecutor, via the testimony of Sgt. Weisburn, engaged in misconduct by improper bolstering.  "Bolstering" is a type of vouching by which the prosecutor invites the jury to believe that other evidence exists that is known to the prosecutor but not introduced into evidence, which corroborates a particular witness's testimony.  *See Francis*, 170 F.3d at 551.  Petitioner cites the Fourth Circuit precedent to support his assertion that improper vouching may also come from a government witness:  "[A] prosecutor's solicitation of assertions of trustworthiness from government witnesses may also be impermissible vouching."  *U.S. v. Lewis,* 10 F.3d 1086.  However, "a prosecutor may ask a government agent or other witness whether he was able to corroborate what he learned course of a criminal investigation. " *Francis,* 170 F.3d at 551.

In the instant action, the prosecutor asked Sgt. Weisburn, "Through the course of your investigation were you able to confirm [that K.B. was sexually assaulted by her stepfather]?"  Sgt. Weisburn stated that, "Through the course of my investigation, was able to determined that that was not a fact."  (Tr. at 297.)    Defense counsel cross-examined Sgt. Weisburn on this issue, particularly the relatively minimal steps he took in the investigation to arrive at that conclusion.  (Tr. 313-15.)

15

Petitioner argues that this testimony constitutes bolstering because Sgt. Weisburn could not have fully investigated the allegations since the sexual abuse allegedly took place in another state, thus he lacked jurisdiction. However, Petitioner's counsel fully cross-examined Sgt. Weisburn on this issue and presented the foundation, or lack of foundation, for the officer's conclusions. Thus, the jury was well aware of the steps that Sergeant Weisburn took. There is no suggestion that the Sergeant knew or had additional facts that the jury did not. Moreover, Petitioner cites no case law in support of his contention that the challenged testimony unfairly prejudices him.

Even if this testimony was improper, it did not result in a deprivation of fundamental fairness. Sgt. Weisburn's testimony was unlikely to prejudice the jury as he set forth the investigation process he took and how he arrived at his conclusion that K.B. was not sexually abused by her stepfather. As noted by the appellate court in denying reopening, "The jury could have drawn its own conclusion about the falsity of the allegation based upon Sergeant Weisburn's factual testimony about the three denials. Furthermore, appellant did not advance this explanation as a defense during trial." (Ex. 18.) Although the remark appears deliberate, it was isolated. Moreover, the strength of the remainder of the case was more than enough to support the jury's finding of guilt. Finally, Petitioner fails to raise the issue of fundamental fairness at all.

In the absence of error and a deprivation of fundamental fairness, there is no basis on which an appellate court would have vacated Petitioner's conviction. Petitioner cannot successfully argue that a reasonable probability exists that the outcome of his appeal would have been different had this issue been raised. Thus,

Petitioner's argument does not support a finding of ineffective assistance of counsel.

### 2. Reading only part of the transcript to the jury (Sub-claim Three)

Petitioner also claims that appellate counsel was ineffective in failing to raise as a federal issue on direct appeal that the trial court read only portions of the transcript to the jury instead of the whole transcript.[1]

The record indicates that during deliberations, the jury asked the court for specific portions of the transcript. The trial court stated: "[the jury] would like a transcript of [A.H.'s] visit and testimony about seeing Jeff leave the room after [A.H.'s] alleged incident. They also want [K.H.'s] transcript regarding that same exit of Jeff." (Tr. 401) Over the objection of Petitioner, the trial court read relevant portions of the A.H's and K.H.'s testimony to the jury. (Tr. 404-12.) The trial court also instructed the jury "not to emphasize what I'm going to read to you. . . . I want you to then take it into context of all your discussions. There is always a concern that reading a portion of a certain transcript might emphasize it to you." (Tr. 410).

Notably, there appears to be no constitutional right to have the transcript read to the jury in full. In the unpublished case of *Bradley v. Birkett*, 192 Fed. Appx. 468 (6th Cir 2006,) the Sixth Circuit held that there is no Sixth Amendment right to have a jury provided with transcripts. The Sixth Circuit stated, "Those federal cases that discuss the issue of read-backs and transcript availability do so under the rubric of the court's supervisory authority over federal criminal trials, not on constitutional principles, and in

---

[1] The reading of the partial transcript was raised on direct appeal, but solely as a state issue. On direct appeal, the state court found the reading of the transcript not to be in error. *State v. Buske*, 20006 Ohio 2054 at ¶ 34-38.

17

any event do not establish a uniform rule." *Id.* at 477.

Furthermore, Petitioner still fails to make a case for ineffective assistance of appellate counsel for not raising the issue of a partial reading of the transcript under federal standards. Petitioner cites *U.S. v. Rodgers,* 109 F.3d 1138 (6th Cir. 1997) as support for his assertion that the trial court improperly read only a portion of the transcript to the jury. In *Rodgers*, the Sixth Circuit discussed what it recognized as "two inherent dangers" in allowing a jury to read a transcript of a witness's testimony during deliberations: "[f]irst, the jury may accord 'undue emphasis' to the testimony;" and "second, the jury may apprehend the testimony 'out of context." *Id.* at 1143.

Petitioner claims that both dangers are present in the instant case because only part of the testimony of A.H. and K.H. was read. Petitioner quotes *U.S. v. Rodgers* in support of this contention:

> . .. . the district court eliminated the second inherent danger by providing the jury with a transcript of all of Adam's testimony, elicited under both direct and cross-examination. Thus, there is no concern that the jury considered any part of Adams' testimony out of context.

*Id.* at 1143 (citations omitted).

However, including the entire transcript of the testimony is simply one way to eliminate the danger of taking the testimony out of context and it is not required that the entire transcript be read. See *U.S. v. Padin*, 787 F.2d 1071 (6th Cir. 1986) (finding that the trial court did not abuse its discretion by reading excerpts of a witness's testimony because "specific and limited excerpts of [the witness's] testimony responded to the jury's request).

In the instant action, there was little danger of either undue emphasis or taking

18

the testimony out of context because the trial court read only the testimony specifically responding to the jury's request and gave explicit and proper instruction on the matter. *See id.* This Court must presume the jury followed the court's instructions. *Zafiro v. United States,* 506 U.S. 534, 540-41 (1993). The trial court's reading of the partial transcript was not in error and did not violate Petitioner's constitutional rights. Therefore, no reasonable probability exists that Petitioner's appeal would have had a different outcome had appellate counsel raised the ground related to the reading of the testimony. In the absence of such a reasonable probability, Petitioner's counsel was acting within the confines of the Constitution and is presumed effective. Petitioner's ground for ineffective assistance for failing to raise this issue should not stand.

## IV. Conclusion

For the foregoing reasons, the Magistrate Judge recommends the Petition be **DENIED.**

s/ *Nancy A. Vecchiarelli*<br>
Nancy A. Vecchiarelli<br>
United States Magistrate Judge

Date:  November 17, 2008

**OBJECTIONS**
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of this notice.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn,* 474 U.S. 140 (1985)*, reh'g denied,* 474 U.S. 1111 (1986).**

20